UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STATE OF IDAHO,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No. 3:12-CV-00608-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it the United States' Motion to Dismiss (Dkt. 16) and the State of Idaho's Motion for Leave to File First Amended Complaint (Dkt. 21) ("Motion to Amend") to add two individual defendants to this case. Defendant opposes Plaintiff's Motion to Amend, suggesting this case should be dismissed for lack of subject matter jurisdiction, rendering Plaintiff's Motion to Amend moot. However, for the reasons expressed below, the Court will grant Plaintiff's First Motion to Amend and allow individuals John Clough, Jr., and Jacob Johnson to be added as defendants (hereinafter "Individual Defendants") to this action. The Court will defer ruling on Defendant's Motion to Dismiss until the Individual Defendants have had the opportunity to obtain representation and to respond to

**MEMORANDUM DECISION AND ORDER - 1**

both Plaintiff's Complaint and Defendant's Motion to Dismiss. Following such response, an evidentiary hearing to resolve the scope of employment issue will be necessary in order for the Court to rule on Defendant's Motion to Dismiss.

## BACKGROUND

This case involves a fire that occurred at the Naval Reserve Officer Training Corps (NROTC) Building at the University of Idaho. On June 18, 2011, active-duty Navy and Marine ROTC students attended a mandatory "Field Day" to thoroughly clean the NROTC building on campus. (Dkt. 16-3, pp. 7-8.)[1] The cleaning was organized by senior ROTC officer Gunnery Sergeant Bradley Tyson. (*Id.*, p. 15; Dkt. 16-4, p. 14.) Approximately ten ROTC members were present for the Field Day, and each was assigned to clean a specific part of the NROTC building. (Dkt. 16-3, p. 24; Dkt. 16-4, pp. 14, 17; Dkt. 16-7, p. 7.) The cleaning project started first thing in the morning and ended several hours later, near lunch time. (Dkt. 16-3, pp. 7, 15.) After the cleaning project was complete, the mandatory assignment was over and the ROTC students were free to leave. (Dkt. 16-3, pp. 7, 15, 17; Dkt. 16-7, pp. 8, 15.) However, Sergeant Tyson decided to

---

[1] In outlining the factual background of this case, the Court cites to deposition testimony attached to Defendant's counsel's affidavit in support of Defendant's Motion to Dismiss. A motion to dismiss for lack of subject matter jurisdiction may rely on extra-pleading material to attack the substance of a complaint's jurisdictional allegations, and the Court may rely on such material to decide the issue. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

**MEMORANDUM DECISION AND ORDER - 2**

barbeque some leftover meat found in the NROTC building's refrigerator to reward the men for their work. (Dkt. 16-4, p. 25.) Approximately nine of the ten ROTC students who had been present for Field Day stayed for the barbeque. (Dkt. 16-3, p. 24.)

Sergeant Tyson went home and retrieved his barbeque grill, chimney lighter and charcoal, and also purchased some provisions from the store for the barbeque. (Dkt. 16-8, pp. 8-10.) It was pouring rain that day, and Sergeant Tyson had some trouble getting the coals hot enough to cook the meat. (*Id*., p. 13.) Sergeant Tyson left the party while the majority of the men were still there, and Sergeant Johnson took over the cooking. (Dkt. 16-7, pp. 12-13.) When the cooking was complete, Sergeant Clough set the grill on the sidewalk in front of the NROTC building for the rain to dump into it. (Dkt. 16-3, p. 18.) Sergeant Johnson also dumped a bucket of water on the coals while they were still in the grill. (Dkt. 16-3, pp. 18-19; Dkt. 16-7, pp. 15-16.) Later, Sergeant Johnson dumped the coals out in the dirt next to the concrete patio. (Dkt. 16-7, pp. 15-16.) Sergeants Clough and Johnson also each dumped one or more buckets of water onto the coals to further extinguish them. (Dkt. 16-3, p. 19; Dkt. 16-7, pp. 15-16.) When the men left the barbeque, the coals were sitting in a mud puddle up against the concrete. (*Id*.)

Later than evening, by 6:00 p.m., the NROTC building was on fire. (Dkt. 16-8, p. 19.) Plaintiff alleges the charcoal coals were not fully extinguished and ignited nearby mulch/plant material, which then spread to the building and caused substantial damage. (Dkt. 1, ¶ 11.) Plaintiff alleges the ROTC students were acting within the scope of their employment when they negligently failed to extinguish the charcoal, and brings a negligence action, pursuant to the Federal Tort Claims Act, 28 USC § 2671 *et. seq.*, (hereinafter "FTCA") against the Defendant United States. In its Motion to Amend, Plaintiff seeks to add a negligence claim against the Individual Defendants, and suggests Sergeants Clough and Johnson were responsible for failing to extinguish the charcoal.[2]

1. **<u>Motion to Amend</u>**

Federal Rule of Civil Procedure 15(a) is "very liberal" and leave to amend "shall be freely given when justice so requires." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (*quoting Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)). The decision of whether to grant or deny a motion to amend pursuant to Rule 15(a) rests in the sole discretion of the trial court. *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The four factors that are commonly used to determine the propriety of a motion for leave to amend are: 1)

---

[2] Plaintiff does not specify whether its negligence action is brought against the Individual Defendants in their official or individual capacity. (Dkt. 21-1.)

**MEMORANDUM DECISION AND ORDER - 4**

undue delay, bad faith or dilatory motive on the part of the movant; 2) repeated failure to cure deficiencies by amendments previously allowed; 3) undue prejudice to the opposing party by virtue of allowance of the amendment; and 4) futility of amendment. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 n. 5 (9th Cir.2011) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

These factors are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend. *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973). "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Id*. Thus, although all four factors are relevant when ruling on a motion for leave to amend, the Ninth Circuit has held that the "crucial factor is the resulting prejudice to the opposing party." *Id*., at 1190. Indeed, prejudice is the touchstone of the inquiry under Rule 15(a). *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003). Ultimately, "[u]nless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey*, 481 F.2d at 1190.

In this case, Plaintiff filed the Motion to Amend to add the Individual Defendants by the Scheduling Order deadline of October 1, 2013. (Dkt. 12.) Further, pretrial motions are not due until April 30, 2014, and trial is not scheduled

**MEMORANDUM DECISION AND ORDER - 5**

to begin until November 12, 2014.  Under these circumstances, the Court finds allowing the proposed amendment would not unduly prejudice the United States.  Further, the other three factors are not at issue because there is no evidence of undue delay or bad faith and Plaintiff has not previously sought to amend the Complaint.  And, although the United States appears to imply amendment would be futile because this Court lacks subject matter jurisdiction, the Court finds Plaintiff has presented facts to raise a genuine dispute as to the character of the ROTC students' acts, namely, whether such acts were taken within the scope of their federal employment.  Because the Court has subject matter jurisdiction under the FTCA if the ROTC students were acting within the scope of their employment, allowing Plaintiff to amend the Complaint to add the Individual Defendants would not be futile.  As such, the Court will **GRANT** the Motion to Amend the Complaint.

2. **Motion to Dismiss**

In order for this Court to have subject matter jurisdiction under the FTCA, the ROTC students must have been acting with the scope of their federal employment when they were allegedly negligent.[3]  28 U.S.C. §§ 1346(b)(1),

---

[3] The FTCA waives sovereign immunity for the acts or omissions of an employee of the government while acting within the scope of his or her employment.  28 U.S.C. § 1346(b)(1).  Absent a waiver, sovereign immunity shields the federal government and its

**MEMORANDUM DECISION AND ORDER - 6**

2679(b)(1). Defendant concedes that the ROTC students are employees of the United States. (Dkt. 16-1, p. 2.) However, Defendant argues the ROTC students were not acting within the scope of their employment when they allegedly acted negligently.[4] (*Id.*)

Under the FTCA, members of the armed forces act within the scope of their employment when they act "in the line of duty." 28 U.S.C. § 2671. In the FTCA context, the phrase acting "in the line of duty" merely invokes the state law of *respondeat superior*. *Merritt v. United States*, 332 F.2d 397, 398 (1st Cir. 1964) (citations omitted). The parties agree that because the fire and events leading to the fire occurred in Idaho, Idaho *respondeat superior* law determines whether the ROTC students were acting within the scope of their employment for purposes of the FTCA. (Dkt. 16-1, pp. 2-3; Dkt. 19, p. 4.)

Generally, under the Idaho doctrine of *respondeat superior*, work performed to serve the employer falls within the scope of employment, whereas actions pursued for a purely personal purpose do not. *Finholt v. Cresto*, 143 Idaho 894,

---

agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity is jurisdictional in nature, and the terms of the United States' consent to be sued defines federal courts' jurisdiction. *Id*.

[4] If the Individual Defendants were not acting within the scope of their employment, this case would not arise under the FTCA and the Court would be without subject matter jurisdiction.

**MEMORANDUM DECISION AND ORDER - 7**

897, 155 P.3d 695 (2007). Defendant argues the ROTC students were pursuing purely personal purposes when they held the barbeque and disposed of the coals. (Dkt. 16-1, p. 6.) In support of this argument, Defendant notes that the men were not required to attend the barbeque, that the barbeque grill, charcoal, buns, beer and condiments were supplied Sergeant Tyson, and not by the ROTC, that Sergeant Tyson did not receive reimbursement from the ROTC for the items he purchased, that the ROTC had no knowledge of and did not authorize the barbeque, and that the barbeque was purely social, and was not an ROTC event. (*Id*., pp. 6-7.)

Plaintiff counters that, unless displaced by Idaho Code §6-1607(2), employers may be subject to *respondeat superior* liability for negligence arising from employee social gatherings. (Dkt. 19, p. 7) (*citing Slade v. Smith's Management Corp*., 119 Idaho 482, 808 P.2d 401 (1991)). In *Slade v. Smith's Management Corp.*, ("*Slade*"), the Idaho Supreme Court reversed the district court's grant of summary judgment in favor of defendant employer, finding genuine issues of material fact precluded judgment on the issue of whether an employer could be held liable on the basis of *respondeat superior* where an employee acted negligently following a social event hosted by the employer. *Id*. at 495. Defendant's employee in *Slade* struck and killed a pedestrian while driving

**MEMORANDUM DECISION AND ORDER - 8**

home intoxicated from a social event sponsored by defendant. The *Slade* court held an employer may be liable for an employee's drunk driving following a company social event where the party was held to further the employer's interest, and when the employee's presence at the social event was either specifically requested or at least impliedly requested or implicitly expected by the employer. *Id*. at 495. The *Slade* court found several facts supported *respondeat superior* liability, including that the employer's local manager was present at the social event, that the employer furnished a substantial nucleus of the alcoholic beverages which were consumed at the party,[5] and that the party was held in part to improve the employer's employee morale. *Id*.

Plaintiff suggests the United States can be found liable under *Slade* because Sergeant Tyson initiated and was present for the barbeque and was thus analogous to the local manager who was present and procured much of the alcohol for the company party in *Slade*. (Dkt. 19, p. 9.) Further, like the employer in *Slade*, the ROTC or Sergeant Tyson furnished the supplies at the barbeque, including the meat and condiments which were located in the NROTC building, as well as all of the other provisions (including the charcoal which ultimately caused the fire). (Dkt. 16-8, p. 9-11.) The barbeque was also held on the ROTC's premises. (Dkt.

---

[5] Many of the employees in *Slade* had also brought their own alcoholic beverages to the company party. *Id*. at 484.

**MEMORANDUM DECISION AND ORDER - 9**

19, p. 10.) Finally, like the company event in *Slade*, the barbeque was held for employee morale, or to "reward" the men for fulfilling their ROTC field day duties. (Dkt. 16-4, p. 25.) The Court finds the aforementioned facts, as well as the fact that the ROTC students' presence was mandatory at the Field Day, and was thus potentially impliedly requested at the barbeque immediately following the Field Day, are sufficient to raise a genuine issue of material fact as to whether the ROTC students were acting within the scope of their employment when they attended the barbeque and allegedly negligently extinguished the charcoals.

Defendant suggests *Slade* is not good law because it was decided nine years before Idaho Code § 6-1607(2) was enacted in 2000. (Dkt. 20, p. 2.) Idaho Code § 6-1607(2) established a presumption against *respondeat superior* liability, which can only be rebutted by clear and convincing evidence that the employer's acts constituted gross negligence or reckless, willful and wanton conduct, *unless* the employee was:

> [W]holly or partially engaged in the employer's business, reasonably appeared to be engaged in the employer's business, was on the employer's premises when the allegedly tortious act or omission of the employee occurred, or was otherwise under the direction or control of the employer when the act or omission occurred.

I.C. § 6-1607(2).

The aforementioned exceptions to the presumption against *respondeat*

*superior* liability are stated in the disjunctive. "Therefore, if one of the circumstances exists, the presumption does not apply." *Nava v. Rivas-Del Toro*, 151 Idaho 853, 860, 264 P.3d 960 (2011). As the fire occurred on the ROTC's premises,[6] at least one of the exceptions is present in this case and the presumption against *respondeat superior* liability established by Idaho Code § 6-1607(2) does not apply. Moreover, the ROTC students could be found to have been partially engaged in the ROTC's business when they disposed of the charcoal because, as at least one of the ROTC students testified, leaving a dirty grill would have been counter to the purpose of the Field Day and could have subjected the students to ROTC discipline. (Dkt. 16-7, pp. 9, 18.) Under the "dual purpose doctrine," an

---

[6] Defendant suggests the fire occurred on the University of Idaho's, and not the Navy's, premises because the building was owned by the University of Idaho and the University allowed the Navy to use the building "without charge." (Dkt. 20, p. 4.) However, the University of Idaho is the main affiliation and location for the active duty Navy and Marine ROTC students associated with the University of Idaho, Washington State University and Lewis & Clark State College. (Dkt. 16-3, pp. 8-11.) The University of Idaho is where such students "always meet." (*Id*.) All of the ROTC events for such students occur at the University of Idaho's campus, presumably in the NROTC building. (*Id*.) If the location designated for and always used by the local Navy and Marine ROTC students could not be considered the ROTC's premises because it is owned by the University of Idaho, it is difficult to imagine what other location could be considered the ROTC's premises. The ROTC had control over the premises, even if the United States did not "own" the premises. Therefore, the Court finds the NROTC building represented the ROTC's premises. Although, as Defendant notes, the fact that a tortious act occurred on an employer's premises does not establish that the conduct was within the scope of employment, this fact does establish that Idaho's presumption against *respondeat superior* liability is not at issue in this case. (Dkt. 20, p. 4) (*citing Nava v. Rivas-Del Toro*, 151 Idaho at 860).

**MEMORANDUM DECISION AND ORDER - 11**

employee's "tortious conduct may be within the scope of employment even if it was partly performed to serve the purposes of the employee or third person." *Nava v. Rivas Del Toro*, 151 Idaho at 858 (quoting 27 AM. JUR. 2D EMPLOYMENT RELATIONSHIP § 385 (2004)). The Court accordingly rejects Defendant's contention that none of the exceptions to Idaho's presumption against *respondeat superior* liability apply in this case.

Although the Court finds that Plaintiff has presented facts to raise a genuine dispute as to whether the ROTC students were acting within the scope of their employment, there is a related issue that must also be addressed. The Federal Employees Liability Reform and Tort Compensation Ac, commonly known as the "Westfall Act," accords federal employees absolute immunity from common law tort claims arising out of acts undertaken during the course of their official duties. 28 U.S.C. § 2679(b)(1). The stated purpose of this provision is to "protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." Pub. L. No. 100-694, § 2(b). As a means to achieve this purpose, the Westfall Act provides federal employees with immunity from ordinary tort suits if the complained of conduct arises out of acts performed within the scope of the

**MEMORANDUM DECISION AND ORDER - 12**

defendant employee's employment. 28 U.S.C. § 2679(d)(1). The parties do not address this issue. However, the Court notes that the Individual Defendants would be immune from suit if they were acting within the scope of their employment when the fire occurred.[7] The Court must defer ruling on the Motion to Dismiss not only because there are disputed facts which will require an evidentiary hearing, but also because the potential liability of the Individual Defendants is dependent on the Court's holding with respect to scope of employment. That is, the Individual Defendants should be immune from suit if they were acting within the scope of their employment, but are subject to suit in their individual capacities if they were not acting within the scope of their employment when the allegedly negligent acts occurred. As the Individual Defendants are not yet parties to this action, they have not been given the opportunity to respond to Defendant's claim that they were not

---

[7] The Westfall Act allows the Attorney General to certify that a defendant employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id*. Upon certification "such claim…shall be deemed an action against the United States under the provisions of [the FTCA], and the United States shall be substituted as the party defendant." *Id*. The Attorney General's decision regarding the scope of employment certification is conclusive unless challenged. *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993). "[T]he party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." *Id*. If challenged, the Attorney General's scope of employment certification is subject to *de novo* review in the district court. *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991). As the Individual Defendants were not named in the original complaint, it is not clear whether they have attempted to obtain certification from the Attorney General, nor whether they have been advised of their right to do so.

**MEMORANDUM DECISION AND ORDER - 13**

acting within the scope of their employment, nor have they presumably obtained representation to advise them of their potential immunity or liability. In the interests of justice, the Court cannot resolve the scope of employment issue without allowing the Individual Defendants, whose personal liability depends upon resolution of this issue, to appear and respond to Defendant's Motion to Dismiss.

The Court accordingly directs the University of Idaho to serve the Individual Defendants with the Amended Complaint. Once served, the Individual Defendants shall have a right to respond to both the Amended Complaint and to Defendant's Motion to Dismiss. The Court also directs both the University of Idaho and the United States to brief its position with respect to the Individual Defendant's immunity under the Westfall Act. Upon reviewing such responses, the Court will set a date for an evidentiary hearing on the scope of employment issue.

## ORDER

**IT IS HEREBY ORDERED**:

1. Plaintiff's Motion to Amend (Dkt. 21) is **GRANTED** and Plaintiff is directed to file its Amended Complaint within five (5) business days of the date of this Order.

2. Defendant's Motion to Dismiss (Dkt. 16) is deferred until the Individual Defendants have been served and given the opportunity to respond to both the

Amended Complaint and to Defendant's claim that they were not acting within the scope of their employment when the fire occurred. The Individual Defendants shall have twenty-one (21) days from the date they file their responsive pleading to the Amended Complaint to file a response to Defendant's Motion to Dismiss;

3. Following the filing of the briefing by the Individual Defendants, the University of Idaho and the United States are each directed to file simultaneous within fourteen (14) days, briefs outlining their respective position with regard to the Individual Defendants' immunity under the Westfall Act.

4. The Court has withdrawn the reference order to the Magistrate Judge on Plaintiff's Motion to Amend (Dkt. 21) because analysis of the Motion to Amend was intertwined with consideration of Defendant's Motion to Dismiss (Dkt. 16).

DATED: February 13, 2014

Edward J. Lodge
United States District Judge